**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SHERRY JOYNER, *individually and
on behalf of others similarly situated*,

               Plaintiff,

   v.

ROCKY MOUNTAIN CAPITAL
MANAGEMENT, LLC; and NATIONAL
CHECK RESOLUTIONS, INC.,

               Defendants.

Civil Action No. 3:20-cv-167

## CLASS ACTION COMPLAINT

Plaintiff, Sherry Joyner, *on behalf of herself and all individuals similarly situated* ("Plaintiff"), by counsel, and for her Class Action Complaint, alleges as follows:

### INTRODUCTION

1.      "Plain Green is a payday lending entity cleverly designed" to enable non-tribal companies "to skirt federal and state consumer protection laws under the cloak of tribal sovereign immunity." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 128 (2d Cir. 2019), *cert. denied sub nom. Sequoia Capital Operations, LLC v. Gingras*, No. 19-331, 2020 WL 129562 (U.S. Jan. 13, 2020). Even though regulatory enforcement efforts and private lawsuits uncovered the misconduct as early as December 2014—including a nationwide class settlement providing over $375 million dollars in relief to consumers approved by this Court[1]—Defendants nonetheless continue to attempt to collect these debts from consumers.

---

[1] *See* Final Approval Order, *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-00495-MHL (E.D. Va. Dec. 13, 2019) (Dkt. 141).

2.      This lawsuit challenges Defendants' collection of these unlawful debts, which were originated in blatant violation of state and federal laws. Based on Defendants' conduct, Plaintiff alleges violations of Virginia's usury and unjust enrichment laws, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Upon information and belief, Defendants received millions of dollars derived from the collection of unlawful debt and conspired with each other, Think Finance, and others to repeatedly violate state usury laws resulting in the collection of an unlawful debt from Plaintiff and the class members. Defendants' acts described herein are unlawful as set forth in 18 U.S.C. § 1962(d).

## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over Plaintiff's RICO claims under 18 U.S.C. § 1965 and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Venue is also proper in this Court pursuant to 18 U.S.C. § 1965(a) because a civil action may be brought in a district court for "any district" where a person "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Defendants have transacted their affairs in this District through the nationwide scheme, which collected millions of dollars from Virginia consumers. As part of their scheme, Defendants electronically withdrew funds from Virginia consumers' bank accounts.

## PARTIES

5.      Plaintiff Sherry Joyner is a natural person residing in Virginia. She is also a "consumer" as defined by the FDCPA. 15 U.S.C. § 1692a.

6.      Defendant Rocky Mountain Capital Management, LLC ("Rocky Mountain"), is a Delaware limited liability company located in New York. Rocky Mountain is a debt buyer.

7.     Defendant National Check Resolution, Inc. ("National Check Resolution"), is a Georgia corporation. National Check Resolution is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a.

## FACTS

### *Plaintiff's Usurious Debt*

8.     On or around February 18, 2016, Ms. Joyner received a usurious payday loan from a lender called Plain Green.

9.     In accordance with the standard rates charged on Plain Green loans, the interest rate charged on Ms. Joyner's loan was far in excess of Virginia's 12% cap, falling between 100% and 400%.

10.     The Plain Green loan was void *ab initio* pursuant to Virginia's usury and licensing laws. *See* Va. Code § 6.2-306 ("Any agreement or contract in which the borrower waives the benefits of this chapter or releases any rights he may have acquired under this chapter shall be deemed to be against public policy and void."); *see also* Va. Code § 6.2-1541(A) (providing that "[a] loan contract shall be void if any act has been done in the making or collection thereof that violates § 6.2-1501").

11.     Because Ms. Joyner's debt was void and charged a usurious interest rate, it was a violation of state and federal law for Defendants to collect or receive any amounts on the loan.

12.     Virginia's usury statutes are a part of Virginia's clearly delineated public policy against usurious loans. In accordance with this policy, any person may not charge an annual percentage rate ("APR") exceeding 12% without first obtaining a consumer finance license from the Commonwealth. Va. Code §§ 6.2-1501(A), 6.2-303(A).

13.    Under Va. Code § 6.2-1541(A), a loan contract is void if the making or collection of the loan contract violates Virginia's 12% interest cap, and no exception to this prohibition exists.

14.    Virginia's public policy against usurious loans is longstanding, and the Supreme Court of Virginia has repeatedly acknowledged that Virginia's "usury statutes represent a clarification of the public policy of the state that usury is not to be tolerated, and the court should therefore be chary in permitting this policy to be thwarted." *Radford v. Cmty. Mortg. & Inv. Corp.*, 226 Va. 596, 601 (1984) (quoting *Heubusch & Reynolds v. Boone*, 213 Va. 414 (1972)).

15.    The Virginia General Assembly has gone so far as to expressly declare that any attempt to circumvent usury laws by waiver is "against public policy and void." Va. Code. § 6.2-306(A) ("Any agreement or contract in which the borrower waives the benefits of this chapter or releases any rights he may have acquired under this chapter shall be deemed to be against public policy and void."); *see also id.* § 6.2-1541. This includes attempts to evade the application "by any device, subterfuge, or pretense whatsoever," including "procurement of a loan through any use or activity of a third person, whether real or fictitious." *See* Va. Code. § 6.2-1501(C).

16.    Many other states recognize the same public policy against usury and have adopted laws similar to Virginia's.[2]

_____

[2] Those states include Alabama, Arizona, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Minnesota, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Rhode Island, South Dakota, and West Virginia. See Ala. Code § 5-18-4 (loans made without a license "shall be void"); Ariz. Rev. Stat. § 6-613(B) (loans that charge illegal finance charges are "voidable"); Conn. Gen. Stat. § 36a-558 (c)(1) (loans made without a license are "void" and uncollectable); Conn. Gen. Stat. § 36a-558 (c)(1) (loans made without a license are "void" and uncollectable); Fla. Stat. § 516.02 (loans made with excessive interest rates are "not enforceable"); Ga. Code § 16-17-3 (loans made without a license "shall be void ab initio"); Idaho Code § 28-46-402 (payday loans made without a license are "void, uncollectable and unenforceable"); 815 Ill. Comp. Stat. 122/4-10 (payday loans made without a license "shall be null and void"); Ind. Code Ann. § 24-4.5-5-202 (loans made without the proper authority are "void and the debtor is not obligated to pay either the principal or loan finance charge"); Ky. Rev. Stat. Ann. § 286.4-991 (loans made without a license are void); Mass. Gen.

17.     Unfortunately, despite the multitude of state and federal protections to prevent usurious lending, predatory financial services "are heavily marketed to financially vulnerable consumers."[3] The collection of unlawful and usurious debt continues to be a major problem, in part because the profits to be realized by small, high interest loans are so high that illegal lenders, debt buyers, and debt collectors are willing to take the significant risk of litigation and liability for their violations of state and federal law.

### *Plaintiff's Loan is the Product of an Illegal Lending Enterprise*

18.     Plaintiff's Plain Green loan was made by an illegal lending enterprise that was formed to avoid state usury and licensing laws, including in Virginia.

Laws Ann. ch. 140, § 110 (small loans made without a license are void);  Md. Code, Com. Law § 12-314 (small loans made without a license that charge excessive interest rates are "unenforceable"); Minn. Stat. §§ 47.60, 47.601 (provisions in loan contracts charging excessive interest rates are void and unenforceable); Minn. Stat. Ann. § 56.19 (authorizing debtor to recover all amounts paid on loans made in violation of licensing requirements); Mont. Code § 31-1-712 (Any deferred deposit loan made by an unlicensed lender "is void, and the unlicensed person may not directly or indirectly collect, receive, or retain any loan principal, interest, fees, or other charges related to the loan"); N.H. Rev. Stat. Ann. § 399-A:23 (any contract for small loan by unlicensed lender is "null and void"); N.J. Stat. Ann. § 17:11C-33 (consumer loans are void if made without a license); N.M. Stat. Ann. § 58-15-3 (small loans made without a license are void); N.Y. Gen. Oblig. Law § 5-511 (usurious loans are "void"); N.Y. Banking Law § 355; N.C. Gen. Stat. Ann. § 53-166 (small loans made without a license are void); Ohio Rev. Code Ann. § 1321.02 (small loans made without a license are void); Or. Rev. Stat. § 725.045 (consumer finance loans made without a license are "void"); 6 R.I. Gen. Laws Ann. § 6-26-4 (loans charging excessive interest "shall be usurious and void"); S.D. Codified Laws § 54-4-44 (loans charging excessive interest or made without a license are "void and uncollectible"); W. Va. Code § 46A-5-101 (loans made in violation of Consumer Credit and Protection Act are "void and the consumer is not obligated to pay either the principal or the loan finance charge").

[3] *See CFPB Finalizes Rule To Stop Payday Debt Traps*, CFPB (Oct. 5, 2017), https://www.consumerfinance.gov/about-us/newsroom/cfpb-finalizes-rule-stop-payday-debt-traps/. Predatory financial services, including high-cost installment loans and payday debt traps, often involve "high-cost, small dollar loans to low income, low-credit borrowers" and "a repayment system that involves the lender withdrawing funds directly from the borrower's bank account." *Payday, Vehicle Title, and Certain High-Cost Installment Loans*, 131 Harv. L. Rev. 1852, 1852 (2018).

19.     For more than eight years, a company called Think Finance, LLC and its subsidiaries (collectively "Think Finance") operated a lending business, which sought to evade state usury laws by using the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation (the "Tribe") as the conduit for its loans.

20.     The purpose of this model was to avoid banking regulatory issues and leverage Think Finance's existing sourcing, underwriting, and servicing platforms from a previous rent-a-bank model that was shut down by the Federal Deposit Insurance Corporation.

21.     Think Finance identified state regulation, including interest rate caps and prohibitions on payday lending to be their primary regulatory concern.

22.     A central feature of Think Finance's business model is the choice-of-law and arbitration provisions used in the scheme's lending agreements. The non-tribal participants in the scheme will claim that they have no liability for their violations of state and federal laws because only tribal law applies to the loans. Such claims have been uniformly denied by courts from a variety of jurisdictions across the country, including by this Court with respect to the very loan agreements at issue here.[4]

23.     Instead of using a national bank as a nominal lender, the loans were made in the name of Plain Green, LLC—an entities formed under tribal law to serve as the front to disguise

[4] *See Gibbs v. Stinson*, No. 3:18CV676, 2019 WL 4752792, at *14-18 (E.D. Va. Sept. 30, 2019); *see also Gingras v. Think Finance*, 922 F.3d. 112 (2d Cir. 2019); *Brice v. 7HBF No. 2, Ltd.*, No. 19-CV-01481-WHO, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019); *Brice v. Plain Green*, 372 F. Supp. 3d 955 (N.D. Cal. 2019). *Cf. Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 WL 4820635, at *7 (C.D. Cal. Aug. 31, 2016); *W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 348 (2016), *reconsideration denied* (Dec. 8, 2016); *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2015 WL 11438192, at *3 (S.D. Fla. Dec. 8, 2015); *Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *10 (N.C. Super. Aug. 27, 2015); *MacDonald v. CashCall, Inc.*, No. CV 16-2781, 2017 WL 1536427, at *10 (D.N.J. Apr. 28, 2017), *aff'd*, 883 F.3d 220 (3d Cir. 2018); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017); *Hayes*, 811 F.3d at 675; *Rideout v. CashCall, Inc.*, No. 2018 WL 1220565, at *8 (D. Nev. Mar. 8, 2018).

Think Finance's role and ostensibly to shield participants in the scheme from liability by exploiting tribal sovereign immunity. In return for the use of the Tribe's name, Plain Green received a nominal flat-fee of the revenue from the loans, but it otherwise had no control over the income, expenses, or day-to-day operations of the businesses.

24.    Within a few days of origination, the loans would be purchased by a limited partnership controlled by another major player in the corrupt enterprise, Victory Park.

25.    Think Finance, the Tribes, Plain Green, Victory Park, and others established an association in fact enterprise to evade state usury laws and collect unlawful interest.

26.    Defendants Rocky Mountain Capital and National Check Resolutions understood that Think Finance and other members of the association in fact enterprise were making and collecting on usurious loans in violation of state usury laws.

27.    Defendants Rocky Mountain Capital and National Check Resolutions knew of and agreed to the overall objective of the enterprise and conspiracy to collect unlawful debt.

28.    Upon information and belief, Defendant Rocky Mountain Capital agreed to further the RICO conspiracy by the collection of unlawful debt when it purchased the invalid loans.

29.    Upon information and belief, Defendant National Check Resolutions agreed to further the RICO conspiracy through the collection of unlawful debt when it agreed to collect on the void loans on behalf of Defendant Rocky Mountain Capital.

*Extensive Litigation Surrounding the Void Loans*

30.    There have been numerous regulatory efforts and private lawsuits challenging Think Finance and its co-conspirators illegal lending and collection of unlawful debt since as early as 2013.

31.    Notably, Think Finance challenged a cease and desist letter issued to Great Plains by the State of New York warning it to stop offering its illegal credit products to consumers in

New York. *Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 356 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014).5

32.    On September 30, 2013, the district court denied Great Plains' request for a preliminary injunction, finding that the "undisputed facts demonstrate[d]" that the illegal activity was "taking place in New York, off of the Tribes' lands," and thus, Great Plains was "subject to the State's non-discriminatory anti-usury laws." *Id*. at 361.

33.    The district court further reasoned, "There is simply no basis…that the Tribes are treated differently from any other individuals or entities that enter New York to lend to New York residents." *Id*.

34.    On October 1, 2014, the Second Circuit affirmed the decision and made several damaging observations. Among other things, the Second Circuit noted that "a tribe has no legitimate interest in selling an opportunity to evade state law." 769 F.3d 105, 114 (2d Cir. 2014) (citing *Washington v. Confederated Tribes*, 447 U.S. 134 (1980)).

35.    The Second Circuit further explained that "[m]uch of the commercial activity at issue takes place in New York. That is where the borrower is located; the borrower seeks the loan without ever leaving the state, and certainly without traveling to the reservation" and that "collection clearly takes place in New York." *Id*. at 115.

36.    These damaging findings were not the only problem for the lending scheme at the end of 2014—the Pennsylvania Attorney General had filed its enforcement action against Think Finance on December 17, 2014. *See Commonwealth of Pennsylvania v. Think Finance, Inc.*, Case No. 14-7139 (E.D. Pa.).

---

5 Think Finance funded and spearheaded this litigation, including drafting the complaint and deciding when to file but left its name off the pleadings.

37.    Since then, many other lawsuits have been brought challenging the validity of Plain Green loans in addition to the collection of unlawful debt on those loans. *See, e.g.*, *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 119 (2d Cir. 2019) (describing the history of the case), *cert. denied sub nom. Sequoia Capital Operations, LLC v. Gingras*, No. 19-331, 2020 WL 129562 (U.S. Jan. 13, 2020); *CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 734661, at *1-2 (D. Mont. Feb. 6, 2018) (describing the allegations and history of the case); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 963 (N.D. Cal. 2019) (describing history of the case and nature of claims); *Gibbs v. Rees*, No. 3:17CV386, 2018 WL 1460705, at *1-4 (E.D. Va. Mar. 23, 2018) (describing the history of the case and nature of the claims).

38.    Despite these regulatory enforcement efforts and private lawsuits establishing the illegality of the loans—including a nationwide class settlement providing over $375 million dollars in relief to consumers approved by this Court[6]—Defendants nonetheless continue to attempt to collect these debts from consumers.

### *Defendants Received Unlawful Interest on the Void Loans*

39.    On or around August 22, 2017, Rocky Mountain Capital purchased Ms. Joyner's Plain Green Loan.

40.    National Check Resolutions collected on Ms. Joyner's Plain Green loan on behalf of Rocky Mountain Capital.

41.    Prior to the sale of Plaintiff's Plain Green loan, her bank account was debited no less than $1,837.30 by Plain Green.

42.    After the sale of Plaintiff's Plain Green loan, she was debited no less than $2,590.55 by National Check Resolutions.

---

[6] *See* Final Approval Order, *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-00495-MHL (E.D. Va. Dec. 13, 2019) (Dkt. 141).

43.     Accordingly, Defendants and their co-conspirators received no less than $4,427.85 from Ms. Joyner as a result of her invalid Plain Green loan, the majority of which was credited to usurious interst and fees.

44.     Because Plaintiff's debt was invalid, Defendants and their co-conspirators had no authority under any agreement or law to collect any amount from Plaintiff.

45.     In an attempt to collect on Plaintiff's loans, National Check Resolutions sent Plaintiff several letters misrepresenting the status of her debt and the amount owed.

46.     For example and without limitation, on or around December 13, 2019, National Check Resolutions sent Plaintiff a letter representing that she owed Rocky Mountain Capital $290.55 on her Plain Green loan. The letter characterized the debt as "your obligations" in regard to the Plain Green debt.

47.     Additionally, on or around December 20, 2019, National Check Resolutions sent Plaintiff an email representing that she owed a balance on her Plain Green loan and offering to settle her account for $100. The email specifically stated that she could pay $100 "to settle your account."

48.     The email also stated that she owed Rocky Mountain Capital a "Settlement Balance" of $100 and that she originally owed $3,140.55 to Plain Green.

49.     The representations made by National Check Resolutions in its communications with Plaintiff were false and misleading representations.

50.     Plaintiff's loan was void under Virginia law, and it was unlawful for any person to collect any principal or interest on the void loan.

51.     Additionally, because her loan was invalid, it was false and misleading for National Check Resolutions to represent that she owed an outstanding balance on an invalid debt.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

52.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

53.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim for herself and on behalf of the "RICO Class," initially defined as follows:

> *All individuals (1) with a Plain Green loan (2) that was purchased by Rocky Mountain Capital and (3) who live in Virginia or another state where the Plain Green debt was void.*

Plaintiff is a member of the RICO Class.

54.    **Numerosity. Fed. R. Civ P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the RICO Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

55.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether an enterprise existed; (2) whether Defendants knew of and agreed to the overall objective to collect unlawful debt; (3) whether the loans are "unlawful debt" for purposes of RICO; and (4) what is the proper recovery for Plaintiff and the class members against Defendants as conspirators in the enterprise.

11

56.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

57.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

58.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

59.     As alleged above, Defendants violated § 1962(d) of RICO by conspiring to violate § 1962(c).

60.     This is evidenced in part by their knowledge of and agreement to the collection of unlawful debt, including in Virginia and other states with similar laws.

61.     Plaintiff and the class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(d) and are entitled to treble their actual damages, which would include any interest, fees, or other sums collected by the enterprise.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

62.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim for herself and on behalf of the "Declaratory Judgment Class," initially defined as follows:

> *All individuals (1) with a Plain Green loan (2) that was purchased by Rocky Mountain Capital and (3) who live in Virginia or another state where the Plain Green debt was void.*

Plaintiff is a member of the Declaratory Judgment Class.

64.     **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the Declaratory Judgment Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

13

65. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**
Common questions of law and fact exist as to all members of the putative class, and there are no
factual or legal issues that differ between the putative class members. These questions predominate
over the questions affecting only individual class members. The common questions include: (1)
whether the loans are valid and (2) whether Defendants may collect on the loans.

66. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of
each putative class member. In addition, Plaintiff is entitled to relief under the same causes of
action as the other members of the putative class. All are based on the same facts and legal theories.

67. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate
representatives of the putative class because her interests coincide with, and are not antagonistic
to, the interests of the members of the class she seeks to represent; she has retained counsel
competent and experienced in such litigation; and she has and intends to continue to prosecute the
action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the
members of the class. Neither Plaintiff nor her counsel have any interests which might cause them
not to vigorously pursue this action.

68. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the
class members predominate over questions affecting only individual members, and a class action
is superior to other available methods for fair and efficient adjudication of the controversy. The
damages sought by each member are such that individual prosecution would prove burdensome
and expensive. It would be virtually impossible for members of the class individually to effectively
redress the wrongs done to them. Even if the members of the class themselves could afford such
individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized
litigation presents a potential for inconsistent or contradictory judgments and increases the delay

and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

69.     Virginia and many other states require all who engage in the business of making personal loans to be licensed.

70.     Neither Plain Green or Great Plains were licensed to make loans in Virginia or any other state in the United States.

71.     Because the loans were made without the required license and charged excessive interest rates, the loans are null and void in Virginia, as well as many other states.

72.     In addition to licensing violations, Defendants' loan violated the general usury laws of many states including Virginia's. *See* Va. Code § 6.2-305(A). Thus, the loans violated the general usury statutes of many states and are void pursuant to state usury laws.

73.     As alleged herein, Defendants' loan agreements were violative of fundamental state public policy in Virginia and other states with similar usury, licensing, and criminal laws.

74.     Plaintiff and members of the class are subject to ongoing harm absent a declaration that the loans were void, including the accumulation of additional debt and adverse credit reporting of the invalid loans.

75.     The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this court will determine the rights and interests of the parties to the Loan Agreements as well as the validity, if any, of the choice of law and forum-selection provisions.

76.    Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the validity and enforceability of the loan agreements.

77.    Accordingly, Plaintiff seeks a declaratory judgment that Defendants are not authorized to collect any outstanding balance on the loan and are not permitted to report negative information regarding the account to the credit reporting bureaus.

### THIRD CAUSE OF ACTION
### VIRGINIA USURY
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

78.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

79.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim for herself and on behalf of the "Virginia Usury Class," initially defined as follows:

> *All individuals (1) who made a payment, (2) on a Plain Green debt that was purchased by Rocky Mountain Capital, and (3) who live in Virginia or another state where the Plain Green debt was void.*

Plaintiff is a member of the Virginia Usury Class.

80.    **Numerosity. Fed. R. Civ P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the Virginia Usury Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

81.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate

16

over the questions affecting only individual class members. The common questions include: (1) whether the loans were made in violation of the Virginia Consumer Finance Act; (2) whether the loans violate state usury laws, such as Va. Code § 6.2-305 because the interest levels were too high; and (3) what is the proper recovery for Plaintiffs and the class members against each of the Defendants.

82.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

83.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

84.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay

and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

85.     Plain Green was not licensed to make loans in Virginia as required by applicable law.

86.     Because Plain Green failed to obtain the requisite license and charged excessive interest rates, the loans are null and void in Virginia. Accordingly, Plaintiff and the class members may disgorge the amounts received by Defendants. *See, e.g.*, Va. Code § 6.2-1541(A).

87.     In addition to licensing violations, Defendants' collection of the loans violated Virginia's general usury laws. Va. Code § 6.2-305(A). As a result, Plaintiffs and the class members are entitled to recover the total amount of interest received, plus twice the amount of interest paid within the past two years. Va. Code § 6.2-305(A).

88.     As alleged herein, Plain Green made and collected on loans using interest rates exceeding Virginia's 12% interest rate cap.

89.     As explained above, Defendants received revenues collected on the loans.

90.     Plaintiff paid interest in excess of that permitted by Virginia law.

91.     Accordingly, Plaintiff and the class members are entitled to twice the amount of such usurious interest that was paid in the two years preceding the filing of this action and their attorney's fees and costs. Va. Code § 6.2-305.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

92.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class—the "Unjust Enrichment Class"—initially defined as follows:

> All individuals (1) who made a payment (2) on a Plain Green debt that was purchased by Rocky Mountain Capital and (3) who live in Virginia or another state where the Plain Green debt was void.

Plaintiff is a member of the Unjust Enrichment Class.

94. **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the Unjust Enrichment Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

95. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Plaintiff and the class members conferred a benefit on Defendants by making a payment on the void loans; (2) whether Defendants knew or should have known of the benefit; (3) whether Defendants retained an unjust benefit by accepting the proceeds from the void loans; and (4) what is the proper recovery for Plaintiff and the class members against each of Defendants.

96. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

97.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

98.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

99.    All of the Plain Green loans to consumers in Virginia and states with similar laws were void and unenforceable.

100.    Plaintiff conferred a benefit on Defendants when she repaid the void loans; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans.

101.    Accordingly, on behalf of herself and all other similarly situated, Plaintiff seeks to recover from Defendants, jointly and severally, all amounts collected by Defendants on loans originated with Plain Green in states where the Plain Green debts were void.

### FIFTH CAUSE OF ACTION
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (CLASS CLAIM AGAINST NATIONAL CHECK RESOLUTIONS)

102.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

103.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class—the "FDCPA § 1692e Class"—initially defined as follows:

> *All individuals located in Virginia or another state where the Plain Green debt was void (1) who National Check Resolutions sent a communication to (2) seeking to collect a debt originating from Plain Green (3) during the one year period prior to the filing of this Complaint.*

Plaintiff is a member of the FDCPA § 1692e Class.

104.    **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the FDCPA § 1692e Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

105.  **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**
Common questions of law and fact exist as to all members of the putative class, and there are no
factual or legal issues that differ between the putative class members. These questions predominate
over the questions affecting only individual class members. The common questions include: (1)
whether National Check Resolutions is a debt collector governed by the FDCPA; (2) whether
National Check Resolutions violated § 1692e of the FDCPA by attempting to collect debts that
were void; (3) whether National Check Resolutions violated § 1692e of the FDCPA by
misrepresenting the character and amount of the debt that was owed; and (4) what is the proper
recovery for Plaintiff and the class members against each of Defendants.

106.  **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of
each putative class member. In addition, Plaintiff is entitled to relief under the same causes of
action as the other members of the putative class. All are based on the same facts and legal theories.

107.  **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate
representatives of the putative class because her interests coincide with, and are not antagonistic
to, the interests of the members of the class she seeks to represent; she has retained counsel
competent and experienced in such litigation; and she has and intends to continue to prosecute the
action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the
members of the class. Neither Plaintiff nor her counsel have any interests which might cause them
not to vigorously pursue this action.

108.  **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the
class members predominate over questions affecting only individual members, and a class action
is superior to other available methods for fair and efficient adjudication of the controversy. The
damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

109.    National Check Resolutions violated § 1692e by falsely representing in its collection letters that Plaintiff owed an outstanding balance on her void Plain Green debt.

110.    National Check Resolutions violated § 1692e by making a communication to Plaintiff that misrepresented the legal status of her debt, misrepresented the amount Plaintiff owed on the loan, and used false and deceptive means to attempt to collect on an invalid loan.

111.    Upon information and belief, Plaintiff alleges that, as a standard practice, National Check Resolutions contacted consumers and would use false and deceptive means in order to collect on the invalid loan and obtain information concerning the putative class members.

112.    Upon information and belief, National Check Resolutions' conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

113.    Plaintiff suffered actual damages as a result of National Check Resolutions violations of § 1692e, including payment on the invalid debt.

114.    Based on National Check Resolutions noncompliance with § 1692e, Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

## SIXTH CAUSE OF ACTION
## VIOLATION OF FDCPA, 15 U.S.C. § 1692f
## (CLASS CLAIM AGAINST NATIONAL CHECK RESOLUTIONS)

115.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

116.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class—the "FDCPA § 1692f Class"—initially defined as follows:

> *All individuals (1) who made a payment (2) to National Check Resolutions (3) on a Plain Green debt (3) during the one year period prior to the filing of this Complaint and (4) who live in Virginia or another state where the Plain Green debt was void.*

Plaintiff is a member of the FDCPA § 1692f Class.

117.    **Numerosity. Fed. R. Civ. P 23(a)(1).** At this time, Plaintiff does not know the exact number of members of the FDCPA § 1692f Class. However, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Additionally, the names and addresses of the class members are identifiable through the business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

118.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether National Check Resolutions is a debt collector governed by the FDCPA; (2) whether National Check Resolutions violated § 1692f by collecting debts that were void; and (3) what is the proper recovery for Plaintiffs and the class members against each of Defendants.

119. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

120. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

121. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

122.    National Check Resolutions violated § 1692f by using unfair practices to collect on the invalid Plain Green debts.

123.    National Check Resolution violated § 1692f by collecting on Plaintiff's debt originating from Plain Green because there was no valid agreement creating the debt.

124.    National Check Resolution violated § 1692f by collecting on Plaintiff's debt originating from Plain Green because the debt was void under Virginia law.

125.    Upon information and belief, Plaintiff alleges that, as a standard practice, National Check Resolutions collected on Plain Green loans that were invalid under state law.

126.    Upon information and belief, National Check Resolutions' conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

127.    Plaintiff suffered actual damages as a result of National Check Resolutions violations of § 1692f, including payment on the invalid debt.

128.    Based on National Check Resolutions noncompliance with § 1692f, Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment on behalf of herself and the classes she seeks to represent against Defendants for:

A.    Certification for this matter to proceed as a class action;

B.    Declaratory, injunctive, and damages relief as pled herein;

C.    Attorney's fees, litigation expenses, and costs of suit; and

D.    Such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**SHERRY JOYNER**

By: _/s/ Kristi C. Kelly_
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
*Counsel for Plaintiff*

27